**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **KHOSHMUKHAMEDOV, et al.,** | ) | |
| | ) | |
| **PLAINTIFFS,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. AW-11-449** |
| | ) | |
| **POTOMAC ELECTRIC POWER COMPANY** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

## MEMORANDUM OPINION

Before this Court are Defendant Potomac Electric Power Company's Motion To Compel Compliance With Subpoena Duces Tecum Served Upon Michael Immerman (ECF No. 23) ("Motion to Compel I") and Defendant Potomac Electric Power Company's Motion To Compel Plaintiffs' Responses To Defendant's Request For Production Of Documents And Motion For Attorney's Fees And Costs (ECF No. 26) ("Motion to Compel II"), collectively the "Motions." The Court has reviewed the Motions and applicable law, as well as Plaintiffs' *in camera* submissions pursuant to the Court's February 21, 2012, Order (ECF No. 42) ("February Order"). No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court DENIES IN PART and GRANTS IN PART the Motions.

## FACTUAL AND PROCEDURAL BACKGROUND

In their Amended Complaint, Plaintiffs allege that Defendant "supplied and distributed electricity" to their home in Potomac, Maryland. Am. Compl. ¶ 7 (ECF No. 12). On or about November 10, 2008, Plaintiffs allege that their "agent," Michael Immerman, asked Defendant to disconnect the electricity to their home. Am. Compl. ¶ 11. Defendant allegedly did not do so. Am. Compl. ¶ 16. Plaintiffs allege that "[a]t some point prior to February 7, 2009," while

Plaintiffs were not in the country, the water pipes in their home froze and broke, flooding the home (the "Incident").  Am. Compl. ¶¶ 15, 18.  Plaintiff's home allegedly incurred damage as a result, Am. Compl. ¶¶ 20-21, and believing that the cause was Defendant's alleged failure to turn off their electricity, Plaintiffs sued Defendant for negligence, breach of contract, and detrimental reliance, *see* Am. Compl. ¶¶ 20-45.

Defendant propounded document requests and interrogatories upon Plaintiffs and served a subpoena *duces tecum* on Mr. Immerman.  *See* Mot. to Compel I 5-6, 9, Exs. 1-3; Mot. to Compel II 6.  In response, Plaintiffs and Mr. Immerman claimed that specific documents were privileged and, after communications between counsel, provided a few privilege logs.  *See* Mot. to Compel I 6-8; Mot. to Compel II 6-9.  Defendant has moved to compel Plaintiffs and Mr. Immerman to produce documents responsive to specific requests and to answer an interrogatory without objection.  *See* Mot. to Compel I 20;  Mot. to Compel II 20.

After initially reviewing the Motions, the Court ordered

> Plaintiffs to 1) submit to the Court paper copies of the documents set forth on their privilege logs for an *in camera* review; and 2) submit to the Court supporting affidavits, which shall provide information and documentation regarding the hiring and/or retention of any consultants or experts not expected to testify at trial.

February Order 1.  The Court further ordered, "Should the affidavits fail to clearly establish Plaintiffs' claims of immunity from discovery under the work product doctrine, disclosure will be required."  *Id*.  Plaintiffs submitted documents and affidavits *in camera* on March 6, 2012.[1]

---

[1] The Court was unable to review documents provided only in Russian.


## DISCUSSION

Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Rule 26(b)(4)(D) notes, however, "Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial."

The Court will first deal with Plaintiffs and Mr. Immerman's privilege and work product claims and then address each discovery request.

### I. Rulings on Plaintiffs' Privilege and Work Product Claims

Plaintiffs seek to prevent disclosure of four categories of documents:

1) Documents created before the Incident regarding subdividing Plaintiffs' property;

2) Communications involving Messrs. Immerman, Anton Rae, and Michael Rae;

3) Communications involving Christopher Davis, Esq.; and

4) Documents created after the Incident involving consultants and their claimed work product.

The Court will deal with each category in turn below.

A. *Documents Created before the Incident Regarding Subdividing Plaintiffs' Property*

Plaintiffs argue that documents relating to their plans and efforts to subdivide their property before the Incident occurred are protected because "the documents prepared with the assistance of counsel, and the consultants retained in this attempt are subject to protection under the attorney work product doctrine and Fed. R. Civ. Pro. 26 (b)(3)(A)." Pls.' Opp'n 9 (ECF No. 24). "Because the work product doctrine is not a privilege, but rather a qualified immunity from discovery,[] Fed. R. Evid. 501 is inapplicable, and Maryland law does not govern this waiver

issue. Rather, federal law does, even though jurisdiction in this case is bottomed on diversity of citizenship." *Continental Cas. Co. v. Under Armour, Inc.*, 537 F. Supp. 2d 761, 769 (D. Md. 2008) (citations and footnote omitted). The scope of the protection is "given the narrowest construction consistent with its purpose." *Pete Rinaldi's Fast Foods, Inc. v. Great Am. Ins. Cos.*, 123 F.R.D. 198, 201 (M.D.N.C. 1988) (citations omitted). To qualify as work product, "[t]he material must be: (1) documents or tangible things; (2) prepared in anticipation of litigation or for trial; and (3) by or for the party or the party's representative." *Id*. (citing 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2024 at 196-97 (1970 and 1988 Supp.)). Wright and Miller suggest that "the nature of the document and the factual situation in the particular case" should be examined in determining whether a "document can fairly be said to have been prepared or obtained because of the prospect of litigation.[]" 8 Wright & Miller, *Federal Practice & Procedure* § 2024 (2011) [hereinafter "FPP"] (footnote omitted). The person claiming the protection bears the "burden to show, as to each document, that the work product in question was: (1) prepared by, or under the direction of, an attorney and, (2) was prepared in anticipation of litigation." *The Equal Rights Center v. Lion Gables Residential Trust*, 07-2358, 2010 WL 2483613, *7 (D. Md. June 15, 2010) (quoting *Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 272 (E.D. Va. 2004)) (internal quotation marks omitted).

Documents prepared in the ordinary course of business are not work product. *See LaSalle Bank Nat'l Ass'n v. Lehman Bros. Holdings, Inc.*, 209 F.R.D. 112, 115 (D. Md. 2002) ("The test is whether in light of the nature of the documents and the particular facts of a given case, the documents can be fairly said to have been prepared or obtained because of the prospect of litigation or whether they must be deemed to have been prepared in the ordinary course of the company's business." (citing *APL Corp. v. Aetna Casualty & Surety Co.*, 91 F.R.D. 10, 18 (D.

Md. 1980))); *see also* FPP § 2024 ("even though litigation is already in prospect, there is no work-product immunity for documents prepared in the regular course of business rather than for purposes of the litigation"). Wright and Miller explain,

> [S]tatements or reports obtained about an event are often regarded as part of the general business activity,[] . . . . Involvement of counsel is not a guarantee that work-product protection will apply, although it may show that the pertinent documents were prompted by the prospect of litigation.[] The focus is on whether specific materials were prepared in the ordinary course of business,[] or were principally prompted by the prospect of litigation.[] In this regard, "dual purpose" documents may be protected even though a nonlitigation purpose can also be ascertained.[]

FPP § 2024 (footnotes omitted).

Case law indicates that work performed in an administrative proceeding may be privileged. For example, in *Envtl. Prot. Servs., Inc. v. EPA*, 364 F. Supp. 2d 575, 586 (N.D. W.Va. 2005), the District Court for the Northern District of West Virginia found that documents were work product because they "were prepared during the course of an actual administrative proceeding against EPS by the EPA." The documents were created after the administrative proceeding began, and were "prepared by an attorney in contemplation of that proceeding and in anticipation of foreseeable litigation." *Id.* Additionally, the ruling in *Baltimore Scrap Corp. v. The David J. Joseph Co.*, No. L-96-827, 1996 WL 720785, *1, 27 (D. Md. Nov. 20, 1996), appears to the support the notion that work by counsel and consulting agents in applying for zoning approval may be work product. *See also* FPP § 2024 ("litigation should be understood generally to include proceedings before administrative tribunals if they are of an adversarial nature.[]" (footnote omitted)).

However, the Court need not rule on whether work performed by an attorney, his client, or their agents to obtain zoning permits are work product given the information provided by Plaintiffs in their Opposition and *in camera*. Plaintiffs did not provide an affidavit from the

attorney(s) that Plaintiffs purportedly retained in pursuit of subdividing their property. In their Opposition, Plaintiffs merely state that they retained counsel to "assist[] them through the process of subdividing the lot . . . . [and] attempted to seek approval . . . through the zoning process to subdivide the Property." Pls.' Opp'n 8. None of the documents noted on the privilege log (Exhibit E, Section II) include communications with counsel. Rather, the documents include communications between Plaintiff Khoshmukhamedov, Mr. Immerman, and Consultant No. 6 and an undated "Proposal and plans for subdivision and construction." *See* Pls.' Opp'n Ex. E at 11. Plaintiffs did not aver in their *ex parte* submission that they retained Consultant 6 per the advice of counsel and to aid their counsel in his representation of Plaintiffs related to some anticipated litigation. Thus, Plaintiffs have not demonstrated that these documents in Exhibit E, Section II are entitled to work product immunity from discovery.

B.  *Communications involving Messrs. Immerman, Anton Rae, and Michael Rae*

Plaintiffs claim that their communications with Messrs. Immerman, Anton Rae, and Michael Rae, and these individuals' communications on behalf of Plaintiffs with consultants and attorneys retained by Plaintiffs, are privileged attorney-client communications. *See* Pls.' Opp'n 18-19. Because this is a diversity action, the claim of attorney-client privilege is governed by Maryland law under Rule 501 of the Federal Rules of Evidence. *See Koch v. Specialized Care Servs., Inc.*, 437 F. Supp. 2d 362, 368 (D. Md. 2005) (citing Fed. R. Evid. 501). Maryland law provides that a communication may be withheld under these circumstances:

> 1) Where legal advice of [any] kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by his legal adviser, (8) except the protection [may] be waived.

*Newman v. State*, 384 Md. 285, 302, 863 A.2d 321, 331 (2004) (alterations in original) (quoting *Harrison v. State*, 276 Md. 122, 135, 345 A.2d 830, 838 (1975)). "'Only those attorney-client communications *pertaining to legal assistance* and *made with the intention of confidentiality* are within the ambit of the privilege.'" *E.I. du Pont de Nemours & Co. v. Forma-Pack, Inc.*, 351 Md. 396, 415-16, 718 A.2d 1129, 1138 (1998) (quoting *Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26, 37 (D. Md. 1974)); *see also Koch v. Specialized Care Servs.*, 437 F. Supp. 2d 362, 368 (D. Md. 2005) (holding that only documents intended to be kept secret are privileged under Maryland law (citing *Forma-Pack*, 351 Md. at 415-16, 718 A.2d at 1138)). The communications "*must relate to professional advice* and to the subject-matter about which such advice is sought." *Forma-Pack*, 351 Md. at 416, 718 A.2d at 1138-39 (quoting *Lanasa v. State*, 109 Md. 602, 617, 71 A. 1058, 1064 (1909)) (internal quotation marks omitted). As with work product, communications seeking business, rather than legal, advice are not protected. *See Forma-Pack*, 351 Md. at 417, 718 A.2d at 1139.

The disclosure to a third party of, or the presence of a third party during, an attorney-client communication does not "automatically destroy the privilege." *Newman*, 384 Md. at 303, 863 A.2d at 331. "If a third party is present or becomes party to the confidential communications, the privilege applies if the presence of the third party is *necessary* for the client to obtain informed legal advice." Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* 264 (5th ed. 2007) (emphasis added). If the third party aids in transmitting "arcane" information or serves as an interpreter of a "verbal or technical" language, his presence may be necessary. *Id*. The third party must be "nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications;" necessity is not defined as "[m]ere convenience." *Id*.

The client can hold or waive the privilege, and so another question to examine is "whether the client reasonably understood the conference to be confidential *notwithstanding* the presence of third parties." *Newman*, 384 Md. at 306-07, 863 A.2d at 333 (quoting *Rosati v. Kuzman*, 660 A.2d 263, 266-67 (R.I. 1995)) (internal quotation marks omitted). The *Newman* court looked to *Rosati*, in which the Supreme Court of Rhode Island analyzed whether "the presence of a defendant's parents during communications between the[ir son's] attorney and their son destroyed any attorney-client privilege." *Id*. at 307, 863 A.2d at 334 (quoting *Rosati*, 660 A.2d at 266). The *Rosati* court determined that because the son's "parents 'occupied a vital role in his defense' . . . . [and his parents] facilitated the son's relationship with the attorney, accepted other offers of assistance on their son's behalf, and acted as his confidants through a 'tense legal proceeding' . . . . [,] the son unequivocally intended that the communications in question remain confidential." *Id*. at 307, 863 A.2d at 334 (quoting *Rosati*, 660 A.2d at 267). The *Newman* court further held that if "the third party is acting at the attorney's behest, . . . the client's consent to the third party's continued presence does not constitute waiver of the privilege because the decision to include the third party was not made by the client, but rather by the attorney." *Id*. at 308, 863 A.2d at 334.

Mr. Khoshmukhamedov avers that he "used the services of Michael Rae, Anton Rae, and Michael Immerman" to "assist in the translation of [his] communications." Pls.' Opp'n Ex. A at 2. Mr. Khoshmukhamedov states that he has "difficulty understanding many English communications," and so "typically use[s] a translator to assist [him] in [his] business and legal dealings in the United States." *Id*. at Ex. A at 1. After communicating with attorneys at Miles & Stockbridge, Mr. Khoshmukhamedov avers that he "used Michael Immerman as [his] agent and translator for purposes of transmitting information to and from [his] attorneys in regard to an

anticipated lawsuit against [Defendant] in connection with the Loss." *Id*. at Ex. A. at 2. Messrs. Immerman, Michael Rae, and Anton Rae purportedly assisted him and "improve[d his] understanding of the information provided from [his] attorneys," and "assist[ed] [his] attorneys in receiving and understanding information provided by [him]." *Id*. Mr. Khoshmukhamedov further provides that

> Without Mr. Immerman's assistance (and initially Michael Rae's and Anton Rae's assistance) [Mr. Khoshmukhamedov] could not and cannot effectively communicate with [his] attorneys, particularly in the discussion of legal theories and advice and bases for calculating the type and amount of damages for purposes of this lawsuit. Mr. Immerman passes these communications to [Mr. Khoshmukhamedov] and explains their contents. As such, Mr. Immerman's role in this matter (and initially the roles of Michael Rae and Anton Rae) is beyond one of mere convenience.

*Id*. Mr. Khoshmukhamedov provides that "[f]or the same reasons that [he] used Mr. Immerman in various communications with [his] attorneys in regard to and in anticipation of litigation, [he] used Mr. Immerman to communicate with . . . consultants in regard to [his] damages for purposes of an anticipated lawsuit against Pepco." *Id*. at Ex. A at 3. Plaintiffs argue that Mr. Immerman has been "an indispensable part of their communications process for these matters." Pls.' Opp'n 19.

Mr. Immerman similarly avers that he "assisted Mr. Khoshmukhadeov [sic] in the translation of his communications with his attorneys," Mr. Immerman "served as his agent and translator for purposes of transmitting information to and from his attorneys in regard to an anticipated lawsuit against [Defendant] in connection with the Loss," and "[t]he purpose of [his] participation in these communications was to assist Mr. Khoshmukhadeov [sic] and improve his understanding of the communications from his attorneys, as well as to assist his attorneys in receiving and understanding information provided by him." Pls.' Opp'n Ex. B at 2. Mr. Immerman further provided that would contact Mr. Khoshmukhamedov "[w]hen

communications were exchanged" to explain "the substance of such communications." *Id*. Mr. Immerman also provides that he "participated and assisted in communications with various consultants for the purpose of evaluating Mr. Khoshmukhadeov's [sic] potential damages in connection with the anticipated lawsuit against Pepco." *Id*. Plaintiffs did not provide affidavits from Messrs. Anton Rae and Michael Rae or Plaintiffs' current attorneys.

The Court finds that, except for those communications in Exhibit E, Section II, which are discussed above, Plaintiffs communications with Messrs. Immerman, Michael Rae, and Anton Rae and these individuals' communications with Plaintiffs' attorneys regarding this litigation and in anticipation of this litigation are privileged attorney-client communications.[2] The record shows that Plaintiffs intended their communications with these individuals to remain confidential, as well as these individuals' communications with Plaintiffs' counsel on their behalf. Further, the record reflects that Plaintiffs relied on these individuals to understand their litigation against Defendant and to facilitate their relationship with their attorneys, particularly given that Plaintiffs are non-native English speakers.

However, after reviewing Plaintiffs' privilege log and the documents submitted *in camera*, the Court is greatly disappointed with Plaintiffs. They have marked as privileged and withheld documents which are clearly not privileged. For example, the fact that a public document is attached to a privileged e-mail does not necessarily render privileged the entire communication. Rather, Plaintiffs are required to redact portions of the e-mail that are privileged, log those redacted portions, and produce any non-privileged portions and attachments. The Court, therefore, orders Plaintiffs to re-review their privilege logs and the withheld documents and re-submit to Defendant within fourteen (14) days: 1) a new privilege log

---

[2] The Court will deal with these individuals' communications with Plaintiffs' consultants in Section D below.

describing those documents and portions of documents that are privileged; and 2) redacted copies of partially-privileged documents.

Furthermore, the Court is dismayed that Plaintiffs have not bates-labeled the allegedly privileged documents so that the Court could refer to the privilege log and find the document without relying on Plaintiffs' tabs. Plaintiffs also improperly provided to the Court some of the e-mail communications without attachments. What is more, the information provided on the privilege logs is insufficient and at times inaccurate – in particular the descriptions. The Court has noted documents logged as being authored by one of the Plaintiffs but in fact are not authored by that Plaintiff. Plaintiffs must correct these entries. The Court hopes that these incorrect entries were not made in an effort to mislead Defendant and the Court. The Court further notes that Plaintiffs' production of the documents to the Court without bates-labels and all attachments, Plaintiffs' complete withholding of some documents which are not completely privileged, and Plaintiffs' improper privilege log have caused the Court to waste valuable resources in evaluating Plaintiffs' privilege claims. The Court did consider sanctions, but will not issue any at this time.

C.  *Communications involving Christopher Davis, Esq.*

After reviewing the materials submitted *in camera*, the Court is convinced that Plaintiffs' communications with Mr. Davis (including Messrs. Immerman, Anton Rae, and Michael Rae's communications with Mr. Davis on behalf of Plaintiffs) were made in anticipation of litigation with Defendant, and so are privileged attorney-client communications. However, the Court again orders Plaintiffs to re-review the documents listed on their privilege logs and resubmit a more accurate privilege log and redacted documents as necessary.

D.    *Documents Created after the Incident involving Consultants and Their Claimed Work Product*

Plaintiffs argue that their communications with various consultants (identified as Consultants 1 through 8); Messrs. Immerman, Michael Rae, and Anton Rae's communications with these consultants; and the consultants' work product created after the Incident are protected because Plaintiffs "at the direction and coordination of their counsel, investigated their damages," which "involved the use of consultants, who were not disclosed as expert witnesses." Pls.' Opp'n 16. As noted previously, Plaintiffs bear the "burden to show as to each document, that the work product in question was: (1) prepared by, or under the direction of, an attorney and, (2) was prepared in anticipation of litigation." *The Equal Rights Center*, 2010 WL 2483613, at *7 (quoting *Rambus*, 220 F.R.D. at 272) (internal quotation marks omitted). The Court considers competing policies:

> On the one hand, fairness in the disposition of civil litigation is achieved when the parties to the litigation have knowledge of the relevant facts, and therefore the discovery rules are given "a broad and liberal treatment." On the other hand, our adversary system depends on the effective assistance of lawyers, fostered by the privacy of communications between lawyer and client and the privacy in development of legal theories, opinions, and strategies for the client.

*Id*. (quoting *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 983 (4th Cir. 1992)).

Unlike in *The Equal Rights Center*, Plaintiffs infer that they had retained counsel before communicating with Consultants 1 through 8 to "request[] legal advice concerning the Loss." Pls.' Opp'n Ex. A at 2, 3. Mr. Khoshmukhamedov avers that "at the direction of [his] attorneys, [he] began to obtain information from various consultants in order to quantify [his] potential damages in anticipation of this lawsuit." *Id*. at Ex. A at 3. When Plaintiffs advised Defendant that they would like to "begin demolition work on the Property," and Defendant asked Plaintiffs

not to do so, Mr. Khoshmukhamedov claims that Plaintiffs' "attorneys contacted additional damage consultants to determine the extent, if any, of such repairs that would be necessary to restore the Property to its pre-loss condition." *Id*. Mr. Khoshmukhamedov further avers, "Based on the repair and remediation protocols prepared by [his] consultants, [his] attorneys issued a pre-litigation demand letter to Pepco outlining the estimated costs for such repairs." *Id*.

The Court is troubled that Plaintiffs' counsel did not submit an affidavit explaining the alleged "direction" that they provided Plaintiffs regarding retaining these various eight consultants; the extent to which counsel dealt with these consultants; and which information the consultants actually provided to Plaintiffs' attorneys specifically in anticipation of litigation. Plaintiffs' claims in their briefs and affidavits that the consultants worked at counsel's "direction" ring hollow without an affidavit from counsel.

The additional affidavits and some of the documents provided *in camera* weaken Plaintiffs' argument that these experts were working in anticipation of litigation. Some of the information provided demonstrates that some of these individuals were working to help Plaintiffs with demolition of their property, rather than calculating Plaintiffs' damages at the direction of Plaintiffs' counsel. Further, some of the supposed "work product" are public documents and communications with Defendant regarding demolition, which are clearly not protected. Plaintiffs have not met their burden to prove that their communications with Consultants 1 through 8; Messrs. Immerman, Michael Rae, and Anton Rae's communications with these consultants, and the consultants' work product are protected.

Thus, Plaintiffs must produce all communications between themselves, their attorneys, and their agents (including Messrs. Immerman, Michael Rae, and Anton Rae) and Consultants 1 through 8 within fourteen (14) days of the date of this Memorandum Opinion. If Plaintiffs

retained other consultants as non-testifying experts, their work product and communications with Plaintiffs, their agents, and attorneys should also be produced as Plaintiffs did not provide evidence that this information should be protected. The Court reminds Plaintiffs that they must include attachments to any e-mails, some of which were not provided to the Court, and if e-mails or e-mail attachments contain non-privileged information, Plaintiffs must redact the privileged information and produce the rest of the pages. Plaintiffs must also produce any documents created by these consultants regarding the property that are in their, their agents, or their attorneys' possession, custody or control. This ruling does not alter the fact that Plaintiffs' attorneys' communications with their disclosed experts and those experts' draft reports are protected as defined in Rule 26(b)(4).

## II. Rulings on the Discovery Requests

The Court will now address the individual discovery requests.

### A. *Requests in Motion to Compel I*

In Motion to Compel I, Defendants seek to compel Mr. Immerman to provide documents responsive to categories 5, 6, 10, 11, and 14 of the subpoena served upon him by Defendant. *See* Mot. to Compel 20, 22. Mr. Immerman initially objected to categories 5 and 6 as "encompass[ing] communications that fall under the protection of the attorney-client privilege and work-product doctrine." *See Id*. Ex. 4. In his Opposition with Plaintiffs, Mr. Immerman further claims that the documents responsive to these categories, as well as to categories 10 and 11, are privileged attorney-client communications and work product, and Defendant has not shown that it needs these documents. *See* Pls.' Opp'n 20-21. The Court finds that some of these documents, which should all be listed on Plaintiffs' privilege logs, may be withheld within the parameters defined in Section I above.

Mr. Immerman does not address category 14 in his letter objecting to the subpoena, or in his Opposition. *See* Mot. to Compel Ex. 4; Pls.' Opp'n. This category seeks "any and all other documents referring or in any way related to the Property . . . or the Occurrence," as defined in the Definitions and Instructions. Mot. to Compel Ex. 3 at 10. The Court grants Defendant's Motion to Compel I in part regarding this request – Mr. Immerman shall produce responsive documents for a period of one year prior to the Incident. Should those documents fall within the privileged or protected areas discussed above, Mr. Immerman shall supplement his privilege log with that information.

B. *<u>Requests in Motion to Compel II</u>*

In Motion to Compel II, Defendant seeks to compel Plaintiffs to provide documents responsive to Requests 1, 3, and 9, and responses to Supplemental Interrogatory 1 and Supplemental Request 1. Mot. to Compel 20, 22; Def.'s Reply 15. Plaintiffs initially objected to Requests 1 and 3 as seeking protected work product and documents "outside the requirements of Rule 26;" but stated that they produced documents subject to these objections. *See* Mot. to Compel II Ex. 2 at 2. In their Opposition, Plaintiffs again object to producing documents responsive to these requests because they claim that the information related to the subdivision of the property is irrelevant, discovery of that information is "unreasonable," and the documents are "not reasonably calculated to lead to the discovery of admissible evidence; rather, Pepco's attempts at obtaining these materials serve the sole purpose of harassing and causing undue burden and expense to the Plaintiffs during the discovery process." Pls.' Opp'n 9, 13-14, 19-20.

The Court has already ruled on the privilege issues in Section I above. The Court further finds that documents regarding subdivision of Plaintiffs' property are relevant. Rule 26(b) of the Federal Rules of Civil procedure allows discovery "regarding any nonprivileged matter that is

relevant to any party's claim or defense." Generally, a plaintiff alleging property damages may seek the loss of the value of the property or the cost of restoring the property, "subject to the limitation that if cost of restoration is disproportionate to diminution in value, then damages will be measured by the difference in value before and after the harm unless there is a reason personal to the owner for restoring the original condition." *Regal Constr. Co. v. West Lanham Hills Citizen's Ass'n, Inc.*, 256 Md. 302, 305, 260 A.2d 82, 84 (1970).  A plaintiff may be entitled to also recover loss of personal enjoyment and use of the land if she cannot occupy or rent the land due to the damage. *See Superior Constr. Co. v. Elmo*, 204 Md. 1, 11-12, 102 A.2d 739, 743-44 (1954).

In this case, Plaintiffs seek damages for harm to their property allegedly caused by Defendant; thus, information related to the value of the property, the diminution in value of the property, any "reasons personal" to Plaintiffs for restoring the property to its original state, and their enjoyment and use of the property is relevant to their claims.  Plaintiffs' planned and actual use of the property falls within these categories.  Further, Plaintiffs' plans for the property and any actions taken in pursuit of those plans are relevant to Defendant's defense that Plaintiffs failed to mitigate their damages.  Hence, documents regarding Plaintiff's plans or efforts to subdivide their property are relevant to the claims and defenses in this case, and Plaintiffs' objections to Requests 1, 3, and 9 on the basis of relevance are overruled.

As to Request 9, Defendant's Motion to Compel II is denied.  Plaintiffs have indicated that these documents do not exist.  The Court cannot order Plaintiffs to produce documents that do not exist.

Defendant also seeks an answer to Supplemental Interrogatory 1 and production of documents responsive to Supplemental Request 1.  As to Supplemental Interrogatory 1,

Defendant's motion is granted. The names of the consultants who worked on the subdivision process are not privileged or otherwise protected for the reasons explained in Section I above.

As to Supplemental Request 1, Defendant's motion is granted for the reasons stated above and with the limitations defined above. First, Plaintiffs' plans to subdivide, build on, or demolish the property are relevant to this case. Second, documents related to subdividing Plaintiffs' property are not privileged as explained in Section I above. Third, Plaintiffs are permitted to withhold communications involving themselves; Messrs. Michael Rae, Anton Rae, and Immerman; and their counsel as explained in Section I above, as well as any communications involving their designated experts as explained in the Federal Rules of Civil Procedure.

**CONCLUSION**

Based on the foregoing, the Court GRANTS IN PART and DENIES IN PART the Motions. Plaintiffs must produce documents, responses, and a revised privilege log as described above within fourteen (14) calendar days of the date of this Memorandum Opinion.

April 17, 2012

/s/
Charles B. Day
United States Magistrate Judge

CBD/mkh