**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

KHOSMUKHAMEDOV, et al.,     )
                                  )
    **PLAINTIFFS,**         )
                                  )
    **v.**                )     **Civil Action No. AW-11-449**
                                  )
**POTOMAC ELECTRIC POWER**    )
**COMPANY**                   )
                                  )
    **DEFENDANT.**        )

## MEMORANDUM OPINION

Before this Court is Defendant Potomac Electric Power Company's Motion To Strike Plaintiffs' Structural Engineering Interim Supplemental Report No. 1, Or In The Alternative, For Leave To Designate An Expert In Response To The Supplemental Report (ECF No. 30) (the "Motion"). The Court has reviewed the Motion, related briefing, and applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court GRANTS IN PART the Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

In their Amended Complaint, Plaintiffs allege that Defendant "supplied and distributed electricity" to their home in Potomac, Maryland. Am. Compl. ¶ 7 (ECF No. 12). On or about November 10, 2008, Plaintiffs assert that their "agent," Michael Immerman, asked Defendant to disconnect the electricity to their home. Am. Compl. ¶ 11. Defendant purportedly did not do so. Am. Compl. ¶ 16. Plaintiffs allege that "[a]t some point prior to February 7, 2009," while Plaintiffs were not in the country, the water pipes in their home "froze and broke, . . . caus[ing] a vast amount of water to flow into the home." Am. Compl. ¶¶ 15, 18. Plaintiffs provide that a neighbor noticed "water flowing from the garage" on or about February 7, 2009, "whereupon the

water to the Property was shut off. " Am. Compl. ¶ 19.  Plaintiffs' home allegedly incurred

damage as a result of the water flow, Am. Compl. ¶¶ 20-21, and believing that the cause was

Defendant's purported failure to turn off their electricity, Plaintiffs sued Defendant for

negligence, breach of contract, and detrimental reliance, *see* Am. Compl. ¶¶ 20-45.

Plaintiffs' expert disclosures were due to Defendant on June 20, 2011.  April 21, 2011

Order (ECF No. 14).  On June 20, 2011, Plaintiffs designated H.C. 'Skip' Harclerode II, P.E., as

an expert and served his "Structural Engineering Final Report," dated June 14, 2011, ("Report

I") on Defendant.  On October 7, 2011, Plaintiffs served Mr. Harclerode's "Structural

Engineering Interim Supplemental Report No. 1," dated September 22, 2011, ("Report II").

October 7, 2011, was the deadline for supplementation of expert disclosures.  Discovery closes

in this case on August 22, 2012, and the dispositive pretrial motions deadline is October 12,

2012.

## DISCUSSION

Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure provides "a party must disclose

to the other parties the identity of any witness it may use at trial to present evidence under

Federal Rule of Evidence 702, 703, or 705."  Fed. R. Civ. P. 26(a)(2)(A).  The "disclosure must

be accompanied by a written report" containing:

> (i) a complete statement of all opinions the witness will express
> and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications
> authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years,
> the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and
testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).  In this case, the parties were required to make initial and

supplemental disclosures by the deadlines set by the Court in its Scheduling Order, as amended.

Should a party fail to timely identify an expert or provide an expert report, Rule 37(c)(1)

provides that "the party is *not allowed to use that information or witness* to supply evidence on a

motion, at a hearing, or at a trial, unless the failure was *substantially justified or is harmless*."

Fed. R. Civ. P. 37(c)(1) (emphasis added).  In addition or alternatively, on motion the Court may

"order payment of the reasonable expenses, including attorney's fees, caused by the failure; . . .

may inform the jury of the party's failure; and . . . may impose other appropriate sanctions."  *Id.*

The advisory committee notes to Rule 37(c)

> emphasize that the 'automatic sanction' of exclusion 'provides a
> strong inducement for disclosure of material that the disclosing
> party would expect to use as evidence.'  Fed. R. Civ. P. 37(c)
> advisory committee note (1993).  The alternative sanctions
> referenced in the rule are primarily intended to apply when a party
> fails to disclose evidence helpful to an *opposing* party.  *See* 7
> James Wm. Moore et al., *Moore's Federal Practice* §§ 37.60[2][b],
> 37.61 (3d ed. 2002).  This is because '[p]reclusion of evidence is
> not an effective incentive to compel disclosure of information that,
> being supportive of the position of the opposing party, might
> advantageously be concealed by the disclosing party.'  Fed. R. Civ.
> P. 37(c) advisory committee note (1993).

*Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 n.2 (4th Cir.

2003) (alteration in original).

The party who fails to timely disclose her expert or expert report bears the burden to

"demonstrate substantial justification for her failure to comply with Rule 26(a)(2)(B)."  *Carr v.*

*Deeds*, 453 F.3d 593, 604-05 (4th Cir. 2006).  The Court has "'broad discretion to determine

whether a nondisclosure of evidence is substantially justified or harmless.'"  *Carr*, 453 F.3d at

602 (quoting *Southern States*, 318 F.3d at 597).  The Fourth Circuit has held

> that in exercising its broad discretion to determine whether a
> nondisclosure of evidence is substantially justified or harmless for
> purposes of a Rule 37(c)(1) exclusion analysis, a district court
> should be guided by the following factors: (1) the surprise to the
> party against whom the evidence would be offered; (2) the ability
> of that party to cure the surprise; (3) the extent to which allowing
> the evidence would disrupt the trial; (4) the importance of the
> evidence; and (5) the nondisclosing party's explanation for its
> failure to disclose the evidence.

*Southern States*, 318 F.3d at 597.

Plaintiffs claim that because Report II merely supplements information provided in

Report I, Plaintiffs did not untimely serve Report II under the Rules and Scheduling Order.  *See*

Pls.' Opp'n Mem. 3-4.  The Court disagrees.  In Report I, Mr. Harclerode presented his opinions

on the steps to take to determine damage to and repair the house in question.  Pls.' Opp'n Mem.

Ex. 1 ("I am providing a final summary of my findings and recommendations concerning the

various building components of this residential property;" Mr. Harclerode recommends

removing and replacing all of the flooring to inspect the subflooring; he recommends replacing

the subflooring, the second floor bathroom piping leaks, electrical panels, and other wiring

devices; he recommends removing and replacing the HVAC system in the basement).  In Report

II, Mr. Harclerode presented new opinions on when the leak occurred and the damage caused

during the three weeks before discovery of the damage in February 2009.  Pls.' Opp'n Mem. Ex.

2 (Mr. Harclerode opines that "water accumulation occurred in the basement of this residence

and was present at least 3 weeks or longer before the February 7, 2009 discovery of water exiting

the garage of the residence by a neighbor;" he opines that "the three week or longer period . . . is

sufficient long term exposure of the plywood subfloor sheathing to moisture to become saturated

and subsequently affect its structural integrity;" he opines on the damage to the wood baseboard

4

in the basement; he opines that "the lack of remediation of the water in the basement for over two years has not resulted in the saturation of moisture in the subflooring of the first floor areas"). Because Report II presented new opinions, rather than supplemental information regarding the Report I opinions, Plaintiffs should have served Report II before the June 20, 2011 deadline. *See Kanawha-Gauley Coal & Coke Co. v. Pittston Minerals Grp., Inc.*, No. 2:09-cv-01278, 2011 WL 320909, at *2-3 (S.D. W. Va. Jan. 28, 2011) (holding that "true supplementation" is "correcting inadvertent errors or admissions," rather than engaging in gamesmanship to avoid the discovery deadlines; thus, a report presenting new opinions as "supplemental" information after the initial disclosure deadline, but before the supplementation deadline, was served untimely (citation and internal quotation marks omitted)).

Because these new opinions are helpful to Plaintiffs, not Defendant, under Rule 37 the Court must strike the untimely served opinions unless Plaintiffs' failure to timely provide the information was substantially justified or harmless. Plaintiffs do not provide adequate reasons for why they failed to timely disclose the information in Report II – in fact, they only argue that Report II was timely filed. *See* Pls.' Opp'n Mem. 6. In their Opposition Memorandum, Plaintiffs infer that Mr. Harclerode submitted an additional report because he received new information. See *Id*. at 3-5. However, some of the information on which Mr. Harclerode allegedly relied in forming his supplemental report seems to have been available prior to the expert disclosure deadline of June 20, 2011. For example, the Becht Engineering report was created in 2009, and Exhibit 1 to Defendant's Reply shows that Plaintiffs have had this report since 2009, when State Farm mailed it to Plaintiffs. *See* Def.'s Reply Ex. 1 (ECF No. 32). Further, having had this report since 2009, Plaintiffs should have subpoenaed State Farm's records before they finally did on July 28, 2011, so that they would have received, and Mr.

Harclerode could have reviewed, the "log notes" before the expert witness designation deadline. *See* Pls.' Opp'n Mem. 3.  The cause and timing of the damage to the home are the paramount issues in this litigation – Plaintiffs should have been investigating these issues well before the June 20, 2011, expert designation deadline.

Mr. Harclerode could have presented opinions on the timing and cause of the damage in the first report based on the information that he had at the time, such as the Becht report and his examination of the property.  He could have then supplemented those opinions based on any "new" information later received.  Plaintiffs have simply not provided a substantial justification for their failure to timely provide Report II.

Ultimately, however, after completing the *Southern States* factor analysis, the Court finds that Plaintiffs' failure to timely provide Report II is harmless for three reasons.  First, Plaintiffs can cure their failure.  Discovery will not close in this case until August 22, 2012.  Plaintiffs can make Mr. Harclerode available for an additional deposition.  The Court can give Defendant the opportunity to designate a rebuttal expert to opine on the issue of when the water accumulated in Plaintiffs' house and the opinions of Mr. Harclerode on the damage caused to the house in the three weeks before February 7, 2009.  Plaintiffs can then have the opportunity to depose this new rebuttal expert.

Second, allowing the new evidence would not disrupt the trial.  Trial has not been scheduled, discovery has not closed, and dispositive motions are not due until October 2012. This situation is not one in which a party is seeking to admit new expert opinions on the eve of trial or after discovery has closed.  The parties have time to conduct additional discovery before the discovery and dispositive motions deadlines have passed.

Finally, the evidence is important to Plaintiffs' case.  When the pipes allegedly broke and whether the damage had completely occurred before Plaintiffs were aware of the damage are key issues in this case, and Plaintiffs should be permitted to attempt to use their expert's new opinions on these topics to counter Defendant's defense of mitigation.

## <u>CONCLUSION</u>

Based on the foregoing, the Court GRANTS IN PART the Motion.  Defendant has twenty (20) calendar days from the date of this Memorandum Opinion and the accompanying Order to designate a rebuttal expert to opine on the issue of when the water accumulated in Plaintiffs' house and the opinions of Mr. Harclerode on the damage caused to the house in the three weeks before February 7, 2009.  With that designation, Defendant must provide an expert report to Plaintiffs, providing the information required by Rule 26.  Plaintiffs will then have twenty (20) calendar days after receipt to schedule a deposition of Defendant's new expert not to exceed one (1) day.  If Defendant has already deposed Mr. Harclerode, Defendant shall have the opportunity to re-depose Mr. Harclerode on his opinions noted in Report II.  That deposition should not exceed one (1) day.

May 11, 2012                                                    _____/s/_____

                                                                        Charles B. Day
                                                                        United States Magistrate Judge

CBD/mkh

7