IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

IZATULLO KHOSHMUKHAMEDOV et al.,

     Plaintiffs,

     v.

POTOMAC ELECTRIC POWER
COMPANY,

     Defendant.

Civil Action No. 8:11-cv-00449-AW

---

## MEMORANDUM OPINION

Pending before the Court are the Parties' Cross-Motions for Summary Judgment. The Court has reviewed the record and finds a hearing unnecessary. For the reasons that follow, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiffs' Cross-Motion for Summary Judgment.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Izatullo Khosmukhamedov and Zoulfia Issaeva are the owners of the real property and improvements located at 12909 Brushwood Terrace, Potomac, Maryland ("Property"). Plaintiffs have sued Defendant Potomac Electric Power Company for failing to disconnect electric power to the Property, thereby allegedly causing it to sustain considerable water damage.

Although Plaintiffs' primary residence is in Moscow, Plaintiffs typically come to the United States twice a year and stay at the Property for a few weeks and sometimes longer.

Plaintiffs have retained Mikhail Immerman to watch over the Property when they are gone and regard him as their agent.

Plaintiffs purchased the Property in 2005 and opened an account with Defendant for electric power in August 2005. *See* Doc. No. 61-7. Plaintiffs kept their account open from August 2005 to November 2008, during which time Defendant provided an uninterrupted supply of power to the Property. *See id.* The pipes did not freeze and break during the winters of 2005-2007, and Plaintiffs evidently heated the Property during this time. *See* Doc. No. 61-4 at 20–21; Doc. No. 61-5 at 7–8.

Plaintiffs stayed at the Property in the fall of 2008 for about a month. Plaintiffs left the Property on October 26, 2008. Doc. No. 61-9 at 5. Plaintiffs' agent contacted Defendant in November 2008 to close Plaintiffs' account. Plaintiffs assert that their agent submitted a written request to disconnect the power and that, additionally, Defendant orally agreed that it would do so. By contrast, Defendant contends that Plaintiffs, through their agent, merely asked it to discontinue electric service, which, in its estimation, does not include disconnecting the service such that the Property receives no power.

Despite leaving the Property in the fall of 2008, Plaintiffs concede that they took no action to maintain heat at the Property. Doc. No. 61-4 at 21. Plaintiffs also concede that they failed to drain the water pipes or shut off the water supply to the Property. *See id.* at 22–23. Furthermore, Plaintiffs' agent concedes that he took no action to maintain heat, shut off the water supply, or drain the water pipes at the Property, and that Plaintiffs never asked him to do so. *See* Doc. No. 61-5 at 6–8.

In the winter of 2008–09, no later than February 7, 2009, the water pipes in the Property froze and broke. Plaintiffs allege that the water pipes failed due to freezing, and Anthony

Bocchichio, Plaintiff's own expert, agrees with their allegation to a reasonable degree of engineering certainty. *See* Doc. No. 12 ¶ 18; Doc. No. 61-11 at 12.

Due to the bursting of the pipes, Plaintiffs' Property sustained considerable water damage. Defendant contends that the freezing and bursting of the pipes caused the water damage. Plaintiffs counter that the energization of the water pump is largely to blame for the water damage. Specifically, they assert that most of water in the system would have been expelled through the Property's garage and that not nearly as much water would have flooded the Property had Defendant disconnected the power. Defendant's expert, Robert Bryant, authored a report in which he concludes that "not operating the heat in the residence and failing to properly winterize the plumbing system to prevent freezing resulted in the loss." Doc. No. 61-12 at 6. When presented with Bryant's conclusions, Plaintiffs' expert stated that he would not disagree with them. Doc. No. 61-11 at 8–9.

Plaintiffs filed the case in state court and Defendants removed the case on the basis of diversity. Plaintiffs lodged an Amended Complaint on March 22, 2011. Doc. No. 12. Plaintiffs assert claims for negligence, breach of contract, and promissory estoppel. The case went into discovery. Defendant filed a Motion to Consolidate, seeking to consolidate this case with 8:12-CV-00820-AW. The Court denied this Motion in October 2012, partly because discovery was over in this case. *See* Doc. No. 62.

Meanwhile, Defendant moved for summary judgment. Doc. No. 61. Plaintiffs filed their Cross-Motion for Summary Judgment a month later. Doc. No. 63. Briefing on the Parties' Cross-Motions for Summary Judgment is complete.

## II.      STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Material disputes are those that "might affect the outcome of the suit under the governing law." *Id.*

Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, the nonmoving party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *See Beal v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Further, if a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Finally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Firefighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

III.    **LEGAL ANALYSIS**

A.      **Negligence**

Defendant attacks Plaintiffs' negligence claim on multiple grounds. Defendant argues that Plaintiffs' negligence claim fails because Plaintiffs failed to designate an expert to testify as to the applicable standard of care. Defendant also argues that Plaintiffs cannot show that its failure to turn off the power was either the but-for or legal cause of the water damage. Further, Defendant asserts that Plaintiffs were contributorily negligent and that such negligence completely bars liability. Finally, Defendant contends that the defense of assumption of the risk bars Plaintiffs' negligence claim. The Court need not address all of these arguments as some of them are meritorious and constitute complete bars to recovery in and of themselves.

"To establish a cause of action in negligence a plaintiff must prove the existence of four elements: a duty owed to him (or to a class of which he is a part), a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages." *Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756, 758 (Md. 1986).

Maryland continues to recognize the doctrine of contributory negligence. *See Harrison v. Montgom. Cnty. Bd. of Educ.*, 456 A.2d 894, 905 (Md. 1983). Thus, it is well-established that "a plaintiff who fails to observe ordinary care for his own safety is contributorily negligent and is barred from all recovery, regardless of the quantum of a defendant's primary negligence." *Id.* at 898 (citations omitted). "In measuring contributory negligence the standard of care imposed upon a person for his own protection is that of a reasonable man under like circumstances . . . ." *Craig v. Greenbelt Consumer Servs., Inc.*, 222 A.2d 836, 837 (Md. 1966). "The Maryland courts have not hesitated to find a plaintiff contributorily negligent as a matter of law where common

experience reveals the foreseeable dangers of the plaintiff's actions." *Reid v. Wash. Overhead Door, Inc.*, 122 F. Supp. 2d 590, 593–94 (D. Md. 2000) (citations omitted). It is well-settled, both in Maryland and other jurisdictions, that a property owner can reasonably foresee the danger that water pipes may freeze in the winter and breaches the duty of ordinary care by failing to adequately heat and/or drain them. *See Commercial Realty Co. v. Nat'l Distillers Prods. Corp.*, 76 A.2d 155, 157 (Md. 1950) (affirming trial judge's decision that landlord negligently caused water pipes to freeze and burst where landlord knew that water ran through the pipes and failed to provide heat in the building in winter); *E. Beck & Co. v. Hanline Bros.*, 89 A. 377, 381–83 (Md. 1913) (affirming jury verdict that defendants negligently allowed water pipe to freeze and burst in winter, partly because of pipe's proximity to room without heat and defendants' failure to drain water from the pipes).[1] "While contributory negligence is ordinarily a jury

---

[1] *See also Powers v. Coates*, 203 A.2d 425, 428 (D.C. 1964) ("Ordinarily the water in the pipes, radiators and other fixtures in a dwelling house will not freeze unless through negligence proper precaution is not taken to prevent it."); *Evans v. Kirson*, 106 S.E. 647, 650 (W.Va. 1921) ("[T]he owner of a building, . . . who permits the water to remain in the pipes . . . must exercise such reasonable precaution as will tend to prevent its freezing when the temperature probably may endanger it."); *Moroder v. Fox*, 143 N.W. 1040, 1042 (Wis. 1913) ("Knowing that the premises were vacant and unheated, and that the water pipes . . . were uncovered and unprotected from frost, it was negligence to allow them so to remain during the winter time."); *Wise v. Wise*, 964 N.E.2d 464, 466 (Ohio Ct. App. 2011) ("[A] reasonable person certainly could foresee injury [by freezing pipes] to a vacant rental property if he ordered the gas company to turn off the gas, the only source of heat to the home, during the winter months."); *Bloomingdale State Bank v. Capitol Bank of Chi.*, 451 N.E.2d 599, 602 (Ill. App. Ct. 1983) ("[I]t was reasonably foreseeable that the failure to turn off the water while failing to turn on the heat could result in damages to the premises . . . ."); *Woodruff v. Oleite Corp.*, 192 N.Y.S. 189, 199 A.D. 772, 774, (N.Y. App. Div. 1922) ("It is a well-understood physical fact that in this climate water in the pipes in an unheated building will freeze and burst the pipes in the winter season."); *Peru Heating Co. v. Lenhart*, 95 N.E. 680, 684 (Ind. Ct. App. 1911) ("In turning off said hot water heat, appellant was chargeable with knowledge of the character of the climate in which it was operating said business, and of the injurious results that might flow from the creating of a dead end in said pipes filled with water; that on account there of the pipes so filled with said water were liable to freeze and burst, when freezing weather came; and that in such case injury would, in all probability, result to the occupants of said building."); *Muller Boat Works, Inc. v. Unnamed 52%2C House Barge*, 464 F. Supp. 2d 127, 146 (E.D.N.Y. 2006) ("Plaintiff, knowing that freezing weather in New York was likely during December through March and that pipes with water could freeze and rupture, negligently permitted the pipes in the vessel to do so."); *Sovereign Chem. & Petroleum Prods., Inc. v. Ameropan Oil Corp.*, 148 F.R.D. 208, 212–13 (N.D. Ill. 1992) (citing cases) ("[I]t was certainly reasonably foreseeable that lack of heat in Chicago during late December or January could cause pipes to burst due to freezing of water."); *Whitelegg v. Standard Acc. Ins. Co.*, 271 N.Y.S.2d 492, 498 (N.Y. Sup.

question, the Maryland Court of Appeals has established that a plaintiff can be contributorily negligent as a matter of law when there is no genuine dispute as to the plaintiff's own negligence." *See Reid v. Wash. Overhead Door, Inc.*, 122 F. Supp. 2d 590, 593–94 (D. Md. 2000) (citing *Driver v. Potomac Elec. Power Co.*, 230 A.2d 321 (Md. 1967)).

"It is a basic principle that '[n]egligence is not actionable unless it is a proximate cause of the harm alleged.'" *Falade v. Beverage Capital Corp.*, Civil Action No. 8:10–cv–02047–AW, 2012 WL 1405720, at *3 (D. Md. Apr. 20, 2012) (alteration in original) (quoting *Pittway Corp. v. Collins*, 973 A.2d 771, 786 (Md. 2009)). "Under Maryland law, proximate cause has two separate requirements." *Id.* "It must be both a 'cause in fact' and 'a legally cognizable cause.'" *Id.* (quoting *Collins*, 973 A.2d at 786).

"Causation-in-fact concerns the threshold inquiry of whether defendant's conduct actually produced an injury." *Collins*, 973 A.2d at 786 (citation and internal quotation marks omitted). "Two tests have developed to determine if causation-in-fact exists, the but for test and the substantial factor test." *Id.* (citation omitted). "The 'but for' test applies in cases where only one negligent act is at issue." *Id.* Under this test, "a party must show that the event 'would not have occurred absent or "but for" the defendant's negligent act.'" *Falade*, 2012 WL 1405720, at *3 (quoting *Collins*, 973 A.2d at 786–87).

---

Ct. 1966) ("[I]t could reasonably have been foreseen seen that, if in freezing weather . . . the heat supply [was] . . . cut off, the water in the heating and plumbing systems would freeze and burst the pipes."); *Jobar, Inc. v. Perkins Old Chi., Inc.*, No. Civ.A. CV-01007, 2001 WL 1807303, at *2 (Me. Super. Ct. Dec. 3, 2001) ("It is reasonably foreseeable that disabling a heating system in winter in Portland could cause frozen water pipes to burst."); *McCartney v. Pawtucket Mut. Ins. Co.*, No. 301572, 1994 WL 723056, at *3 (Conn. Super. Ct. 1994) ("The court finds [against] the plaintiff [because she] did not use reasonable care to maintain heat in her vacant and unoccupied house . . . ." ).

"When two or more independent negligent acts bring about an injury, however, the substantial factor test controls." *Collins*, 973 A.2d at 787. Under this test, "[c]ausation-in-fact may be found if it is 'more likely than not' that the defendant's conduct was a substantial factor in producing the plaintiff's injuries." *Id.* (citations omitted). The following considerations are important, either individually or collectively, in determining whether the actor's conduct is a substantial factor in bringing about harm to another:

> (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;
>
> (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces of which the actor is not responsible;
>
> (c) lapse of time

*See id.* (citation omitted).

Once causation-in-fact is established, the inquiry shifts to whether the cause-in-fact is the legally cognizable cause of the harm. *Id.* To determine whether the factual cause is the legally cognizable cause, courts ask "whether the actual harm to a litigant falls within a general field of danger that the actor should have anticipated or expected." *Id.* at 786–87. Although causation—both cause-in-fact and legal cause—is generally a question for the jury, "it becomes a question of law in cases where reasoning minds cannot differ." *Id.* at 792 (citation and internal quotation marks omitted).

In this case, a reasonable juror could only conclude that Plaintiffs failed to observe ordinary care to avoid the water damage. Plaintiffs left the Property on October 26, 2008. Plaintiffs concede that they took no action to maintain heat at the Property. Plaintiffs also concede that they failed to drain the water pipes or shut off the water supply to the Property.

Furthermore, Plaintiffs' agent concedes that he took no action to maintain heat, shut off the water supply, or drain the water pipes at the Property, and that Plaintiffs never asked him to do so. There is no dispute that the pipes failed due to freezing; Plaintiffs so allege and their own expert agrees to a reasonable degree of engineering certainty. Likewise, Defendant's expert concludes that "not operating the heat in the residence and failing to properly winterize the plumbing system to prevent freezing resulted in the loss." Doc. No. 61-12 at 6. When presented with Bryant's conclusions, Plaintiffs' expert stated that he would not disagree with them. These undisputed facts, coupled with the longstanding rule that the danger that undrained pipes will freeze and burst in the winter is reasonably foreseeable, compel a reasonable juror to conclude that Plaintiffs failed to exercise ordinary care to protect themselves from the harm at issue. Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiffs' negligence claim.

Plaintiffs' negligence claim would fail even had they not acted with contributory negligence. No reasonable juror could conclude that Defendant's failure to shut off the power at the Property was either the factual or legal cause of the damage. In terms of factual causation, the Court will apply the substantial factor test as Plaintiffs allege that Defendant's failure to turn off the electricity constituted negligence. Thus, for the purposes of argument, one could regard it as a second negligent act. Under *Collins*, courts may give controlling force to "whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces of which the actor is not responsible." *See* 973 A.2d at 787 (citation omitted). Here, Plaintiffs have created a force or series of forces which are in continuous and active operation up to the time of the harm. Plaintiffs concede that they made no effort to maintain heat, shut off the water supply,

or drain the water pipes at the Property. According to Defendant's expert, with whose conclusions Plaintiffs' expert does not disagree, these forces induced the pipes to rupture. Although Plaintiffs allege that the energized water pump exacerbated this harm by pushing water throughout the Property, Defendant's provision of electricity is "harmless unless acted upon by other forces of which the actor is not responsible." *See id.* (citation omitted). Indeed, Plaintiffs maintained electricity at the Property during the winters of 2005–07 without incident. The damage occurred only after Plaintiffs failed to heat the Property and drain the pipes, causing the pipes to burst. Defendant is not responsible for these actions, and the alleged damage that the provision of electricity caused is ancillary to the pipes' bursting. Thus, the provision of electricity was harmless until Plaintiffs' negligence acted on it. For these reasons, it was not a cause-in-fact of the damage.

Assuming that providing electricity was a cause-in-fact of the damage, it still would not constitute the legal cause; it does not fall within a general field of danger that Defendant should have anticipated or expected. Plaintiffs' own expert acknowledges that keeping electric on was presumably necessary to provide heat to the Property. Doc. No. 61-11 at 80–81. And, as discussed, it is common knowledge that providing heat to a home in cold winter climates is usually necessary to keep water pipes from failing. Therefore, Defendant had no reason to anticipate that supplying the Property with power would cause the pipes to break. Furthermore, as stated, Defendant provided electric to the Property for the prior three winters without incident. Thus, Defendant had no particular reason to believe that continuing to provide electric despite Plaintiffs' request to disconnect service would cause the pipes to break. Accordingly, Defendant's provision of electricity was not the legal cause of the complained-of harm.

Plaintiffs' counterarguments lack merit. The only opposition Plaintiffs raise to Defendant's contributory negligence argument is that Plaintiffs believed that, by disconnecting the power to the Property, water from the pipes would drain back into the underground well, thereby precluding the possibility of their freezing and bursting. The salient flaw in this argument is that "the standard of care imposed upon a person for his own protection is that of a reasonable man under like circumstances." *Craig*, 222 A.2d at 837. Therefore, Plaintiffs' subjective view about whether disconnecting the power displayed ordinary care is irrelevant. *See id.*; *see also In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 559 F. Supp. 2d 424, 438 (S.D.N.Y. 2008) (litigants' "state of mind plays no role in determining whether they . . . acted as a reasonably prudent person").

As for causation, Plaintiffs make two distinct arguments. First, Plaintiffs argue that the energization of the pump caused the pipes to become overpressurized, which in turn caused them to burst. This argument fails because Plaintiffs' own expert repeatedly repudiated it. *See* Doc. No. 65-3 at 4–6, 8, 12. Plaintiffs' second argument is that, had Defendant disconnected the power, the vast volume of the water from the system would have been expelled through the Property's garage and that not nearly as much water would have flooded the Property. Although the Court agrees that there is a factual dispute over how much water would have leaked into the Property had Defendant disconnected the power, this dispute fails to present a genuine issue of causation for trial. For reasons stated at length, it is unforeseeable that supplying a house with electricity in the winter would result in water damage, let alone substantial flooding. If anything, a reasonable person would anticipate that shutting off the power in winter would cause the heating system to stop functioning, thereby creating a danger that water pipes will burst. Therefore, no reasonable juror could conclude that the alleged damages are within the general

field of danger that Defendant should have expected through its failure to turn off electric service at the Property.

In light of the preceding considerations, Plaintiffs' negligence claim presents no genuine factual disputes for trial. Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiffs' negligence claim.

**B.      Breach of Contract**

Plaintiffs predicate their breach of contract claim on alternative theories of relief. First, Plaintiffs argue that there was a contract between them and Defendant for the provision of electric service, and that one of its terms required the disconnection of the service upon customer request. Alternatively, Plaintiffs assert that a separate contract was created when Plaintiffs' agent attempted to have the electric turned off and one of Defendant's representatives orally agreed to turn off the service.

Defendant attacks Plaintiffs' breach of contract claim on several grounds, including that no reasonable juror could conclude that its failure to disconnect the power caused the consequential damages Plaintiffs allege. Despite filing memoranda totaling over sixty pages in connection with the Parties' Cross-Motions for Summary Judgment, Plaintiffs fail to respond to this argument. As this argument is meritorious, the Court declines to consider the remainder of Defendant's arguments.

"Under Maryland law, the elements of a breach of contract are 1) a contractual obligation and 2) a material breach of that obligation." *Chubb & Son v. C & C Complete Servs., LLC*, Civil Action No. 8:12–cv–01127–AW, 2013 WL 336718, at *7–8 (D. Md. Jan. 23, 2013) (citation and internal quotation marks omitted). Once these elements are satisfied, "the non-breaching party may recover damages for 1) the losses proximately caused by the breach [and] 2) that were

reasonably foreseeable." *Hoang v. Hewitt Ave. Assocs., LLC*, 936 A.2d 915, 934 (Md. Ct. Spec. App. 2007) (citation omitted). Maryland applies the proximate cause standard for negligence claims to breach of contract claims. *CR-RSC Tower I, LLC v. RSC Tower I, LLC*, 56 A.3d 170, 195 (Md. 2012). Thus, as with negligence claims, recovery for breach of contract is predicated on "whether the actual harm to a litigant falls within a general field of danger that the actor should have anticipated or expected." *Id.* Likewise, the nonbreaching party may recover consequential damages only if the parties could reasonably foresee that a breach of contract might result in the complained-of harm. *See id.* at 188–89.

Here, regarding Plaintiffs' negligence claims, the Court held that a reasonable juror could only conclude that Defendant's provision of electricity to the Property was not the proximate cause of the damage to Plaintiffs' Property. As the standard of proximate causation for breach of contract claims mirrors the standard of proximate causation for negligence claims, the Court incorporates its previous analysis by reference and concludes that no reasonable juror could find that Defendant's failure to disconnect the power proximately caused Plaintiffs' damages. The Court further holds that a reasonable juror could only conclude that the Parties could not have reasonably foreseen that failing to turn off the electricity would result in the water damage at issue. Reasonable people could not have contemplated that providing power to a home in the winter—which is presumably necessary to keep pipes from freezing—would result in pipes' bursting or in exacerbating preexisting damage caused by pipes that had already burst due to a homeowner's heedless choice to turn off the heat in the winter. Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiffs' breach of contract claim.

C.      **Promissory Estoppel**

Plaintiffs also assert a promissory estoppel claim that fails as a matter of law. Under Maryland law, the elements of promissory estoppel are as follows:

1. a clear and definite promise;

2. where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee;

3. which does induce actual and reasonable action or forbearance by the promisee; and

4. causes a detriment which can only be avoided by the enforcement of the promise.

*Pavel Enters., Inc. v. A.S. Johnson Co., Inc.*, 674 A.2d 521, 532 (Md. 1996) (citation omitted). The trial court, and not a jury, must determine whether binding the promisor is necessary to prevent injustice. *Id.* at 533–34.

In this case, although genuine factual disputes arguably exist regarding the first three elements, the Court disagrees that injustice will occur if it does not bind Defendant. The alleged promise is to turn off the Property's power. It makes little sense to enforce the promise to disconnect the power because doing so obviously could not prevent the extra flooding that Plaintiffs contend Defendant's broken promise caused. Hence, this case contrasts with the typical case in which a promisee relies on a promise detrimentally by making an investment or foregoing an economic opportunity. In such cases, enforcing the promise figures to enable the promisee to defray the investment or recoup, at least partially, the lost opportunity. Here, however, enforcing the promise would result in the pointless outcome of disconnecting the power years after the fact (in the winter to boot) when Plaintiffs presumably need power at the Property. Plaintiffs might respond that the Court should contemplate what would have happened had Defendant shut off the power at the relevant time. In this way, Defendant would compensate

14

them for the extra water damage that the water pump's operation allegedly engendered. But this argument ignores that Plaintiffs' negligence in failing to maintain heat and/or drain the pipes at the Property was the moving force behind the water damage. Had Plaintiffs not neglected to take these steps to protect the pipes from freezing, it is exceedingly unlikely that they would have burst. And had they not burst, the operation of the water pump would have been nonconsequential. Given the hands-on role Plaintiffs played in causing the water damage, they lack sufficiently "clean hands" for equitable relief. *See id.* (internal quotation marks omitted). Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiffs' promissory estoppel claim.

## IV.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiffs' Cross-Motion for Summary Judgment. A separate Order follows.


_____February 19, 2013_____                                  _____/s/_____
              Date                                                      Alexander Williams, Jr.
                                                                        United States District Judge